UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Biopolymer Engineering, Inc.,

Plaintiff,

v.

High Performance Living Corporation,

Defendant.

Civ. File No. 00-2509 (PAM/JGL)

**MEMORANDUM AND ORDER**

---

This matter is before the Court on Defendant High Performance Living Corporation's Motion to Dismiss and Plaintiff Biopolymer Engineering's Motion for Preliminary Injunction. For the reasons that follow, the Court denies Defendant's Motion and grants Plaintiff's Motion.

**BACKGROUND**

This is a patent infringement case involving U.S. Patent 5,702,719 (the "'719 patent"), invented by Byron A. Donzis ("Donzis"). The '719 patent is directed to general nutritional supplementation involving Beta Glucan. On September 30, 1999, Donzis entered into a licensing agreement (the "Agreement") with Plaintiff Biopolymer Engineering ("Biopolymer") whereby Biopolymer became the "exclusive licensee" of the '719 patent. A copy of the Agreement was filed with the United States Patent and Trademark Office on December 28, 1999. (See Donzis Aff., Ex. B.)

FILED
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Defendant High Performance Living ("HPL") sells Beta Glucan products. Biopolymer has tested the Beta Glucan product currently being sold by HPL and alleges that it infringes on the claims of the '079 patent. Biopolymer now seeks a preliminary injunction enjoining HPL from making, selling, offering for sale, marketing and/or importing any Beta Glucan products that can be used as a dietary or nutritional supplement. HPL moves for dismissal under Rule 12(b)(7) for failure to join an indispensable party pursuant to Rule 19.

**DISCUSSION**

**A. Motion to Dismiss**

For the purposes of HPL's Motion to Dismiss, the Court takes all facts alleged in Biopolymer's Complaint as true. Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). Further, the Court must construe the allegations in the Complaint and reasonable inferences arising from the Complaint favorably to Biopolymer. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). A motion to dismiss will be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." Id.; see also Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

HPL argues that this case must be dismissed because Biopolymer is required to join Donzis, the patent owner, in all infringement actions relating to the '719 patent. See Indep. Wireless Tel. Co. v. Radio Corp. of Am., 269 U.S. 459, 468 (1926); 35 U.S.C. § 281. While the above-stated rule is generally true, there is a rather notable exception. That is, "where the patentee makes an assignment of all substantial rights under the patent, the assignee may

be deemed the effective 'patentee' . . . and thus may have standing to maintain an infringement in its own name." Prima Tek II, L.L.C. v. A-Roo Co., 222 F.3d 1372, 1377 (Fed. Cir. 2000); see also 35 U.S.C. § 100(d). When determining whether a licensing agreement conveys substantial rights, particular attention should be payed to "whether the agreement conveys in full the right to exclude others from making, using, and selling the patented invention in the exclusive territory." Prima Tek, 222 F.3d at 1379.

HPL argues that the Agreement does not convey substantial rights because Donzis retains the right to sue if Biopolymer fails to sue within 60 days of learning of a third party's infringement, and because Biopolymer must obtain prior written approval from Donzis before entering into a settlement agreement. (Skaar Supp. Aff., Ex. 1 ¶ 6.3.) The Court is not persuaded. As explained by the Federal Circuit, "[s]tanding to sue for infringement depends entirely on the putative plaintiff's proprietary interest in the patent, not on any contractual arrangements among the parties regarding who may sue and who will be bound by judgments." Prima Tek, 222 F.3d at 1381. Therefore, the provisions relied on by HPL, while marginally limiting, do not bear on the ultimate question of whether Biopolymer has standing to sue in this case. Based on a reading of the agreement, the Court is satisfied that Biopolymer does indeed have the requisite proprietary interest in the patent to satisfy standing requirements.

Specifically, Biopolymer has an "exclusive license to make, have made, import, use, offer for sale, and sell products utilizing [the patent']." (Skaar Supp. Aff., Ex. 1 ¶ 3.1.)

Biopolymer also has the unrestricted authority to sub-license the patent to third parties. (Id.) Moreover, Biopolymer has the right to sue for any infringement relating to the patents. (Id. ¶ 6.2.) Within that right, Biopolymer may choose whether to join Donzis in the action. (Id.) If Biopolymer initiates suit, it has full supervision and control over the litigation, bears all of the expenses and costs of litigation, and will retain any monies recovered, whether by court judgment or settlement. (Id. ¶ 6.4.) These broad provisions strongly favor a finding that Donzis conveyed substantial rights to Biopolymer.

During the hearing on this matter, HPL argued for the first time that the Agreement cannot be deemed an "exclusive license" because at the time Biopolymer and Donzis executed the Agreement, Donzis was already bound by another licensing agreement with Carmel Research, Inc. ("Carmel") relating to the patent in issue. In support of this contention, HPL points to the Affidavit of Carmel CEO, Frank Jordan ("Jordan"), in which Jordan states that "[T]o this day, Carmel has exclusive rights in and to the ['015 and '079] patents." (Jordan Aff. ¶ 7.) However, according to Biopolymer, Donzis' licensing agreement with Carmel effectively terminated on January 25, 1999, over nine months before Biopolymer and Donzis entered into the Agreement. (See Donzis Aff. ¶¶ 3-8, Mosty Aff. ¶¶ 2-4.) The Court acknowledges that the existence of another "exclusive licensee" would be a critical factor in determining the precise relationship between Biopolymer and Donzis, however, the Court need not resolve the issue at this time. As previously stated, the Court must construe all allegations in favor of the claimant on a motion to dismiss. See Morton,

793 F.2d at 187. In the Complaint Biopolymer states that it is the "exclusive licensee" of Donzis' '079 patent. (Compl. ¶ 6.) Thus, the Court must preliminarily conclude that Biopolymer is in fact the exclusive licensee of Donzis' patents. However, because standing implicates the Court's jurisdiction to hear this matter, the Court does not preclude HPL from raising the standing issue later during the course of this litigation should it become appropriate to do so. Having previously found that the Agreement conveyed substantial rights to Biopolymer, the Court denies HPL's Motion to Dismiss.

**B. Motion for Preliminary Injunction**

Biopolymer alleges that HPL sells Beta Glucan products infringing on the '719 patent. Biopolymer seeks to enjoin HPL from making, selling, offering for sale, marketing and/or importing any Beta Glucan products that can be used as a dietary or nutritional supplement. Motions for preliminary injunctions are governed by the four-part test set forth in Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc). Under the Dataphase standard, four factors are weighed against each other in determining the propriety of issuing preliminary relief: (1) the threat of irreparable harm to the petitioner; (2) the threat of harm to the respondent balanced against the harm to the petitioner; (3) the likelihood that the petitioner will prevail on the merits; and (4) the public interest. Id. "At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." Id.

1. Likelihood of Success on the Merits

In order to prevail in this infringement action, Biopolymer must first establish that the '719 patent is valid and enforceable and, second, that the '719 patent has been infringed. See Jeneric/Pentron, Inc. v. Dillon Co., 205 F.3d 1377, 1380 (Fed. Cir. 2000). Pursuant to 35 U.S.C. § 282, the '719 patent will be presumed to be valid. This presumption can only be overcome if HPL shows by clear and convincing evidence that the patent is invalid. Pacific Furniture Mfg. v. Preview Furniture Corp., 800 F.2d 1111, 1113 (Fed. Cir. 1986). HPL does not argue that the patent is invalid. Rather, as above, it argues that Biopolymer does not hold valid title to the patent. As previously discussed, at this time the Court is satisfied that Biopolymer has standing to bring this infringement suit. Therefore, the issue of title has no bearing on the merits of Biopolymer's preliminary injunction motion. The Court finds, for the purposes of this Motion, that the '719 patent is valid and enforceable.

Turning to the infringement prong, Biopolymer argues that HPL has literally infringed the '719 patent. Under the first step of literal infringement analysis, the Court examines the claims portion of the patent as a matter of law. Markman v. Westview Instruments, Inc., 52 F.3d 967, 977 (Fed. Cir. 1995). The second step of the literal infringement analysis involves comparing the properly construed claims asserted by Biopolymer to Defendant's accused products. Id. at 976.

The '719 patent has two claims, which read as follows:

> 1. A composition suitable for nutritional supplementation comprising a water-insoluble yeast cell wall extract comprising substantially purified beta (1,3) Glucans having a particle size if about 1.0 microns or less .
>
> 2. The composition of claim 1 having a particle size of about 0.2 microns or less.

HPL does not dispute the claim construction advanced by Biopolymer in its opening memorandum.[1] (See Pl.'s Mem. in Supp. Mot. for Prelim. Inj. at 5-7.) Rather, HPL simply argues that Biopolymer cannot prove infringement for the sole reason that Biopolymer cannot show that HPL's product is "substantially purified beta (1,3) glucans." (Def.'s Mem. in Opp'n at 4.) Based on the '719 patent specification, the term "substantially purified beta (1,3) yeast extract Glucan" refers to a yeast cell wall extract "comprising predominantly beta (1,3) glycosidic linkages." (Pl.'s Mem. in Supp. at 7.) The ordinary meaning of the word "predominantly" means "mainly or for the most part." (Id. (citing Merriam-Webster's Collegiate Dictionary).)

According to HPL's expert, Dr. Parastoo Azadi, HPL's product contains, at most, 46.44 percent beta (1,3) glucan, which is well below that required to rise to the level of

---

[1] Moreover, where, as here, "a patent applicant has elected to be a lexicographer by providing an explicit definition in the specification for a claim term[,] . . . the definition selected by the patent applicant controls." Renishaw PLC v. Marposs Societa' per Azioni, 158 F.3d 1243, 1249 (Fed. Cir. 1998). Therefore, even if HPL had disputed Biopolymer's claim construction, Biopolymer's reasonably clear, deliberate, and precise claim construction would likely control. See id.

"predominant." (See Tiefenthaler Decl., Ex. 4.) As Biopolymer points out, however, HPL's own bottles containing the substance in issue indicate that the product contains 86.6 percent 1,3 linked glucose. (Skaar Decl., Ex. D.) Moreover, HPL's website indicates that its product contains 94.3 percent beta 1,3 glucan. (See id., Ex. C.) At these percentages, the "predominantly" limitation has clearly been met. Therefore, based on HPL's own statements, and because HPL raises no other arguments relating to non-infringement, the Court concludes that it is likely that Biopolymer will ultimately succeed in establishing that HPL's product infringes on the '719 patent.

2. Threat of Harm to Biopolymer

Biopolymer argues that unless HPL is enjoined from selling its product, there will be confusion in the marketplace between Biopolymer's and HPL's products. Biopolymer further notes that a showing of likelihood of success coupled with continuing infringement raises a presumption of irreparable harm to the patentee. See Toro Co. v. White Consol. Indus., Inc., 920 F. Supp. 1008, 1019 (D. Minn. 1996). HPL has raised no compelling arguments to rebut the presumption of irreparable harm. Therefore, because the Court concluded that Biopolymer has a strong likelihood of success on the merits, this prong also weighs in its favor of granting the injunction.

3. Balance of Harms

Biopolymer claims that HPL will suffer no irreparable harm if the injunction is granted because HPL may continue to sell its product if it purchases Beta Glucan from

Biopolymer. In response, rather than setting forth the potential harm to HPL if the injunction is granted, HPL merely argues that there is no harm to Biopolymer. As previously noted, a presumption of harm has arisen in this case because of the strong likelihood that Biopolymer will ultimately succeed on the merits. Absent some showing of harm by HPL, the Court must conclude that this factor weighs in favor of granting the injunction.

4. Public Interest

It is generally recognized that the public interest favors protecting the rights of valid patent holders. Hybritech Inc. v. Abbott Labs, 849 F.2d 1446, 1458 (Fed. Cir. 1988). Because it appears that HPL is infringing Biopolymer's patent, and because HPL has raised no critical public interest that would be injured by the grant of preliminary relief, this prong also weighs in favor of granting the injunction.

In summary, analysis of the four Dataphase factors under the facts of this case indicates that the entry of a preliminary injunction is appropriate. Accordingly, during the pendency of this litigation, HPL is enjoined from making, selling, offering for sale, marketing and/or importing Beta Glucan products that can be used a dietary or nutritional supplement, unless the Beta Glucan is purchased from Biopolymer. Because neither party contests bond, the Court imposes only a nominal bond of $1,000 to secure the Preliminary Injunction. See Fed. R. Civ. P. 65(c).

**CONCLUSION**

For the foregoing reasons, and upon all of the files, records, and proceedings herein, the Court denies HPL's Motion to Dismiss and grants Biopolymer's Motion for Preliminary Injunction.

Accordingly, **IT IS HEREBY ORDERED** that:

1. HPL's Motion to Dismiss (Clerk Doc. No. 13) is **DENIED**;
2. Biopolymer's Motion for Preliminary Injunction (Clerk Doc. No. 19) is **GRANTED**;
3. During the pendency of this litigation, HPL is enjoined from making, selling, offering for sale, marketing and/or importing Beta Glucan products that can be used a dietary or nutritional supplement, unless the Beta Glucan is purchased from Biopolymer; and
4. Biopolymer shall post a bond in the amount of $1,000 to secure this Preliminary Injunction. In lieu of a bond, Biopolymer may post cash or its equivalent with the Clerk of Court.

Dated: March 9, 2001

Paul A. Magnuson
United States District Court Judge